Joel Shapiro, OSB #003814
E: joel@joelshapirolaw.com
Law Office of Joel Shapiro, LLC
1420 NW Lovejoy St, Suite 631
Portland, OR 97209
T: (971) 999-1889

Travis R. Walker, Florida Bar #36693 (*pro hac vice forthcoming*)
E: travis@traviswalkerlaw.com
The Law Offices of Travis R. Walker, P.A.
1100 SE Federal Hwy
Stuart, FL 34994
T: (772) 708-0952

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| MELEAH THOMPSON, | Case No.: |
| Plaintiff, | |
| v. | COMPLAINT |
| MATTHEW ZOLLER; JASON FARR; WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.; JUNCTION CITY EAST KINGDOM HALL OF JEHOVAH'S WITNESSES; AND JOHN DOES 1-10, | |
| Defendants. | |

## INTRODUCTION

1.    This action seeks redress for grave violations of federal and state law arising from a long-standing pattern of sexual exploitation, coercion, concealment, and retaliation inflicted upon

1. COMPLAINT

Plaintiff Meleah Thompson when she was a minor member of the Jehovah's Witnesses religious organization.

2.      Plaintiff brings this suit pursuant to the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595, together with Oregon common-law and statutory causes of action, against both the individual perpetrators and the institutional entities that facilitated, concealed, and benefited from their unlawful conduct.

3.      The conduct at issue resulted in enduring psychological trauma, economic loss, and emotional and psychological injury. Plaintiff now seeks compensatory, punitive, and statutory damages to vindicate her rights and to hold Defendants accountable under the laws of the United States and the State of Oregon.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, including the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589-1591 and 1595, and the civil remedy for sexual abuse of a minor under 18 U.S.C. § 2255.

5.      This Court also has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367, because those claims arise out of the same case or controversy as Plaintiff's federal claims.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiff's claims occurred in Lane County, Oregon, within the Eugene Division of the United States District Court for the District of Oregon.

## PARTIES

7.      Plaintiff Meleah Thompson is an adult resident of the State of Colorado. During the time

2. COMPLAINT

relevant to these events, Plaintiff was a minor and an active member of the Junction City East Kingdom Hall congregation.

8. Defendant Matthew Zoller is an individual resident of California who, while associated with the congregation, used his access and authority to engage in unlawful conduct toward Plaintiff.

9. Defendant Jason Farr is an individual resident of Oregon and Plaintiff's legal brother-in-law. Although not a congregation member at the time of the misconduct, congregation elders concealed his action due to his marital relationship with Plaintiff's sister, an active Jehovah's Witness.

10. Defendant Watchtower Bible and Tract Society of New York, Inc. ("Watchtower") is a New York religious corporation that directs and governs Jehovah's Witness congregations throughout the United States, promulgates internal disciplinary and reporting policies, and maintains final authority over the conduct of elders and congregational bodies.

11. Defendant Junction City East Kingdom Hall of Jehovah's Witnesses ("Kingdom Hall") is an unincorporated association located in Lane County, Oregon, operating under Watchtower's supervision.

## STATUTORY AND LEGAL FRAMEWORK

12. The Trafficking Victims Protection Act ("TVPA"), codified at 18 U.S.C. §§ 1589-1591, prohibits forced labor, trafficking for involuntary servitude, and sex trafficking accomplished through force, threats, fraud, coercion, or abuse of authority. Congress enacted the statute to combat human trafficking and exploitation, particularly where vulnerable individuals are compelled to provide labor or services through psychological manipulation, abuse of power, or social control.

13. 18 U.S.C. § 1589 prohibits knowingly obtaining the labor or services of another person through force, threats, fraud, or coercion, including schemes intended to cause a person to believe that failure to perform services would result in serious harm.

3. COMPLAINT

14.    18 U.S.C. § 1590 prohibits recruiting, harboring, transporting, providing, or obtaining a person for labor or services in violation of federal trafficking laws.

15.    18 U.S.C. § 1591 prohibits knowingly recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining a person for a commercial sex act through force, threats, fraud, or coercion, or where the victim is a minor.

16.    18 U.S.C. § 1595 provides a civil cause of action for victims of trafficking and authorizes recovery against any person who violates the trafficking statutes or knowingly benefits, financially or otherwise, from participation in a venture engaged in such conduct.

17.    Congress enacted these provisions to protect vulnerable victims who are controlled through coercion, psychological manipulation, abuse of authority, and social isolation, recognizing that trafficking frequently occurs in environments where victims cannot freely refuse participation.

18.    Plaintiff's claims under the Trafficking Victims Protection Act do not require proof of a commercial sex act where Defendants obtained Plaintiff's labor or services through coercion, abuse of authority, and psychological domination. Courts recognize that "services" include non-economic and sexual conduct compelled through coercive means, particularly where the victim is a minor.

19.    Defendants' participation in a "venture" may be established through a pattern of coordinated conduct, ongoing relationships, and tacit agreement to facilitate and conceal abuse, including institutional policies and practices that enable such conduct.

20.    18 U.S.C. § 2255 provides a civil remedy for individuals who, while minors, were victims of sexual abuse offenses under federal law and allows recovery of actual or statutory damages, attorneys' fees, and costs.

21.    Under Oregon law, Or. Rev. Stat. § 163.263 prohibits involuntary servitude, including compelling another person to provide labor or services through coercion or abuse of authority.

4. COMPLAINT

22.     Or. Rev. Stat. § 30.867 provides a civil remedy for victims of human trafficking and involuntary servitude under Oregon law.

23.     In addition, Oregon law requires clergy and church officers to report suspected child abuse pursuant to Or. Rev. Stat. § 419B.010 *et seq*. Failure to report known or suspected abuse may constitute negligence *per se*.

24.     At all relevant times, Defendants Watchtower and the Kingdom Hall owed Plaintiff a duty to protect minors under their authority and supervision and to comply with Oregon's mandatory reporting laws.

## CONSTITUTIONAL LIMITATIONS DO NOT BAR PLAINTIFF'S CLAIMS

25.     Plaintiff's claims arise from secular misconduct, including sexual abuse of a minor, trafficking, negligent supervision, and failure to report child abuse.

26.     These claims can be resolved through neutral principles of law and do not require interpretation of religious doctrine.

27.     The First Amendment does not shield religious organizations from liability for tortious or criminal conduct.

28.     Ecclesiastical abstention does not apply where claims are based on secular conduct and statutory violations.

## FACTUAL ALLEGATIONS

### A.  Watchtower's Centralized Governance and Control

29.     At all relevant times, Watchtower exercised centralized authority and control over Jehovah's Witness congregations throughout the United States, including the Junction City East Kingdom Hall. Watchtower promulgated mandatory policies governing the handling of allegations of sexual misconduct, the discipline of congregational members, and the reporting of abuse.

5. COMPLAINT

Congregational elders were required to follow directives issued by Watchtower, including internal procedures for investigating allegations and communicating with organizational leadership before reporting misconduct to outside authorities. As a result, the policies and practices applied to Plaintiff's abuse allegations were implemented pursuant to Watchtower's centralized governance and oversight.

30.     Under Watchtower's organizational structure, local congregations do not operate independently. Instead, elders are appointed and supervised pursuant to policies established by Watchtower and are required to follow written guidance and directives issued by Watchtower concerning congregational discipline, the handling of allegations of wrongdoing, and the investigation of misconduct by congregational members.

31.     At all relevant times, elders and representatives acted within the scope of their authority and pursuant to organizational policies. Defendants are liable under agency, respondeat superior, and ratification principles.

32.     Watchtower also maintained centralized procedures governing the investigation and handling of allegations of child sexual abuse within congregations, including policies directing elders to consult organizational authorities and follow internal protocols before contacting law enforcement or other outside authorities. These centralized policies and practices shaped the response to Plaintiff's abuse disclosures and contributed to the concealment of the misconduct described herein.

B.  **Watchtower Internal Abuse Handling Procedures**

33.     These internal procedures required elders to follow organizational protocols when abuse was reported, including consulting Watchtower guidance and internal policies before contacting law enforcement or other civil authorities. As a result, decisions regarding how abuse

6. COMPLAINT

allegations were handled were shaped by Watchtower's centralized policies rather than by independent action of local congregants.

34.     Defendants' internal procedures constituted affirmative practices governing abuse response, including internal reporting chains and delayed or suppressed reporting to civil authorities.

35.     Consistent with these policies, the elders who received Plaintiff's disclosures followed internal organizational practices that prioritized internal handling of the allegations rather than reporting the abuse to civil authorities. These procedures contributed to the concealment of the abuse and allowed the perpetrators continued access to minor members of the congregation.

36.     Defendants were aware of the substantial risk that minors within Jehovah's Witness congregations could be subjected to sexual abuse by adult members who held positions of trust and authority. Despite this knowledge, Defendants maintained policies discouraging reports to civil authorities and prioritizing internal handling of allegations, thereby consciously disregarding the foreseeable risk of harm to minor congregants.

37.     Defendants were on notice of risks of sexual abuse through prior reports, internal records, and recurring allegations within congregations.

38.     This knowledge was reinforced by repeated internal handling of abuse complaints without external reporting.

39.     Defendants deliberately avoided acquiring actual knowledge by failing to investigate and by adhering to policies that minimized abuse absent corroboration.

### C.  Institutional Benefit from Concealment

40.     Defendants also derived significant benefits from concealing allegations of sexual abuse within the congregation. By suppressing reports of misconduct and handling allegations

7. COMPLAINT

internally rather than reporting them to civil authorities, Defendants preserved the reputation of the organization, retained congregational membership, maintained financial contributions from members, and avoided legal and public scrutiny that would have resulted from disclosure of abuse. These benefits constituted things of value within the meaning of federal trafficking law and were obtained through Defendants' participation in the venture that enabled the abuse described herein.

41.    Defendants preserved financial contributions, membership retention, and organizational stability by concealing abuse.

42.    Defendants avoided legal exposure, reputational harm, and financial liability, constituting "things of value" under the TVPRA.

**D.  Early Congregational Environment (1989 - 1992)**

43.    Plaintiff was raised within the Jehovah's Witness faith and attended the Junction City East Kingdom Hall from childhood.

44.    Plaintiff was particularly vulnerable due to her age, dependence on the congregation, and lack of external support systems.

45.    During this period, Defendant Zoller and other adult members of the Congregation cultivated and increased their access to Plaintiff through religious and social gatherings. They used their positions of authority to groom her by providing things of value, including gifts, special privileges, elevated attention, and assurances of spiritual approval and protection, to create dependency and normalize inappropriate contact.

46.    As a result of the grooming, coercion, and abuse of authority described above, Defendants compelled Plaintiff, while she was a minor, to perform sexual acts for their gratification and benefit. These acts constituted "services" within the meaning of state and federal trafficking statutes, in that Plaintiff was induced and coerced to engage in physical acts performed for the

8. COMPLAINT

benefit of Defendants under conditions of psychological domination, manipulation, and fear of religious punishment, social isolation, and disfellowshipping. Plaintiff did not freely consent to provide these acts, but rather performed them as a result of Defendants' exploitation of their authority and control over her within the religious community.

47.     The sexual acts performed constituted "services" under federal trafficking law because they were compelled through coercion and abuse of authority.

48.     Defendants' policies ensured perpetrators retained continued access to Plaintiff, facilitating ongoing abuse.

**E. Escalation and Coercion**

49.     Between approximately 1992 and 1995, Defendants Zoller and Farr engaged in escalating sexual misconduct and psychological coercion, including repeated sexual assaults, fondling, and forced sexual acts.

50.     Defendants exploited Plaintiff's fear of spiritual punishment, disfellowshipping, and social isolation to secure compliance.

51.     Plaintiff's upbringing required obedience to male authority figures, creating a coercive environment impairing her ability to resist or report abuse.

52.     This conditioning made refusal psychologically and socially dangerous.

53.     Defendants reinforced these fears to maintain control.

54.     These acts were undertaken under the guise of spiritual mentorship, satisfying the statutory elements of coercion under 18 U.S.C. § 1591(e)(2).

**F. Additional Misconduct by Adult Congregant and Institutional Non-Response from Congregation Leadership**

55.     At approximately age fourteen, Plaintiff was sexually assaulted by Gene Baird. She

9. COMPLAINT

reported the incident to elders, who failed to notify authorities, failed to investigate, and failed to restrict Baird's access.

56.    The elders' response was consistent with the internal policies and practices that discouraged external reporting and prioritized organizational reputation over child safety.

57.    Although Baird has since passed away, the congregation's failure to act on Plaintiff's disclosure constitutes an additional instance of negligent supervision, failure to report, and institutional concealment that compounded Plaintiff's harm and contributed to the long-term trauma she experienced.

### G. Reporting to Elders and Institutional Concealment (1995-1996)

58.    In or about 1995-1996, Plaintiff reported abuse to elders including Bill Neuhaus, Robert Kimes, Mel Zoller, and Ray Clark during meetings associated with the Kingdom Hall. No report was made to authorities.

59.    Elders informed Plaintiff that action required a second witness, effectively preventing further action.

60.    This requirement functioned as a barrier to reporting, discouraged disclosure, and allowed perpetrators continued access.

61.    Elders failed to report suspected child abuse despite direct disclosures, violating Or. Rev. Stat. § 419B.010.

62.    This concealment was consistent with Watchtower directives emphasizing internal handling of such matters and avoiding "worldly" authorities.

63.    Plaintiff understood that reporting or leaving would result in shunning, family separation, and social isolation, which compelled her silence.

///

10. COMPLAINT

**H. Retaliation and Disfellowshipping (1996-1998)**

64.    After Plaintiff persisted in seeking accountability, congregation leaders subjected her to public disciplinary proceedings.

65.    She was expelled ("disfellowshipped"), publicly shamed, and later pressured to apologize for her accusations in order to regain standing, further traumatizing her and reinforcing the coercive environment.

66.    Plaintiff appeared before an appellate panel of elders in Eugene after initial proceedings.

67.    She was questioned about her conduct, blamed, and her disfellowshipping was upheld, resulting in public shaming and forced isolation.

68.    Her disfellowshipping was upheld, resulting in public shaming and forced isolation.

**I. Continuing Concealment and Institutional Benefit (1998-Present)**

69.    Defendants' actions demonstrate a pattern of handling abuse internally while protecting perpetrators and organizational reputation.

70.    Years later, Plaintiff confronted Defendant Farr before three elders in the South Hills congregation, where Farr confessed to misconduct.

71.    Despite the confession, elders encouraged Plaintiff to "forgive him" so he could receive a leadership position.

72.    The Governing Body issued an apology acknowledging Plaintiff's improper disfellowshipping, communicated by Elder Dennis Vaughn.

**J. Ongoing Harm and Injury**

73.    Plaintiff suffered severe emotional and psychological harm including post-traumatic symptoms, anxiety, depression, loss of faith community, and impaired relationships and earning capacity. As a result of Defendants' grooming, manipulation, and psychological coercion, Plaintiff's

11. COMPLAINT

ability to evaluate the nature of the sexual conduct imposed upon her was substantially impaired, limiting her capacity to protect her physical and psychological well-being.

74.    Plaintiff's damages are concrete and supported by treatment and documented harm.

75.    Harm was exacerbated by Defendants' institutional responses.

76.    Her injuries have required extensive therapy and medical care and remain ongoing with costs exceeding $100,000 to date and projected future expenses of at least $500,000.

### K. Continued Retaliation and Disfellowshipping in 2020

77.    In 2020, Plaintiff was again subjected to punitive disfellowshipping by the Warren Lake Congregation of Jehovah's Witnesses in Fort Collins, Colorado.

78.    Elders alleged that Plaintiff had engaged in "adultery," despite the fact that she had already filed for divorce and was living separately from her husband at the time.

79.    During this judicial proceeding, elders asserted that Plaintiff's conduct reflected "a pattern of sexual misconduct since she was a teen", directly referencing the period during which she was abused by Defendants Zoller and Farr.

80.    This proceeding subjected Plaintiff to renewed spiritual discipline, public shaming, and coercive pressure, and it ultimately resulted in her permanent separation from the congregation.

81.    Plaintiff determined at that time that she could no longer remain in the religion due to the continued mistreatment, disbelief, and retaliatory actions taken against her.

### L. Recent and Ongoing Emotional and Psychological Harm

82.    In the five years following her 2020 disfellowshipping, Plaintiff has suffered severe emotional injury, including episodes of major depression, anxiety, trauma responses, and continued psychological harm resulting from ongoing shunning.

83.    Plaintiff has been treated as if she were "dead" by lifelong friends, extended family

12. COMPLAINT

members, and the religious community in which she was raised, consistent with Jehovah's Witness shunning practices.

84.     These injuries are directly connected to Defendants' historic abuse, concealment, and the organization's recent punitive actions and remain ongoing.

**M. Economic Harm and Life Consequences Resulting from Organizational Doctrine.**

85.     As a result of Watchtower doctrine discouraging higher education, Plaintiff did not pursue college or vocational training during her youth.

86.     When she left both her marriage and the religion after fourteen years as a stay-at-home mother, Plaintiff was forced to support herself and her three children with low-wage employment, including positions at Lowe's and Starbucks.

87.     Plaintiff continues to struggle financially due, in part, to the absence of post-secondary education and the restrictive doctrinal environment in which she was raised.

88.     These economic injuries are a direct and foreseeable result of Defendants' actions, teachings, and supervisory failures and contribute to Plaintiff's ongoing damages.

## TOLLING OF STATUTE OF LIMITATION

89.     Plaintiff's claims are timely because the applicable statutes of limitation were tolled by Defendants' concealment of abuse, the coercive religious environment in which the abuse occurred, and Plaintiff's delayed discovery of the illegal nature and consequences of Defendants' conduct.

90.     **Delayed Discovery Due to Psychological Trauma and Coercive Control.**

As a direct result of Defendants' grooming, manipulation, and abuse of religious authority, Plaintiff's ability to understand and evaluate the nature and legal significance of the abuse was substantially impaired. Plaintiff was raised within a religious structure that required obedience to elders and adult male congregants as spiritual authorities, and she was conditioned to believe that questioning those

13. COMPLAINT

authorities could result in severe consequences, including disfellowshipping and social isolation. These dynamics prevented Plaintiff from recognizing the wrongful nature of Defendants' conduct and delayed her ability to pursue legal remedies.

91.    **Fraudulent Concealment by Defendants.**

Defendants and their agents actively concealed the abuse through institutional policies and practices designed to suppress disclosure and prevent reporting to civil authorities. When Plaintiff disclosed abuse to congregation elders, those reports were dismissed and never forwarded to law enforcement despite mandatory-reporting obligations. The application of internal rules requiring corroborating witnesses discouraged investigation and reinforced the concealment of misconduct. These actions prevented Plaintiff from discovering the full scope of Defendants' wrongdoing and equitably tolled the applicable statutes of limitation.

92.    **Institutional Retaliation and Continuing Psychological Harm.**

After Plaintiff reported the abuse, Defendants subjected her to disciplinary proceedings, public shaming, and disfellowshipping. These retaliatory actions reinforced the coercive environment that had enabled the abuse and further prevented Plaintiff from seeking outside assistance or pursuing legal remedies.

93.    **Continuing Institutional Conduct.**

Defendants' misconduct extended beyond the initial abuse. The organization continued to conceal wrongdoing, protect perpetrators, and maintain policies that discouraged reporting of abuse. In later proceedings, Defendants again referenced Plaintiff's prior abuse in disciplinary actions against her, causing renewed psychological harm and reinforcing the institutional control that had previously prevented Plaintiff from pursuing legal action.

///

14. COMPLAINT

94. **Timeliness of Federal Claims.**

Plaintiff's federal claim under 18 U.S.C. § 2255 is timely because the statute provides that "[t]here shall be no time limit for the filing of a complaint commencing an action under this section."

<u>CAUSES OF ACTION</u>

<u>FIRST CAUSE OF ACTION</u>

**Sex Trafficking (18 U.S.C. §§ 1591, 1595)**

*(Against Defendants Matthew Zoller, Jason Farr, Watchtower Bible and Tract Society*

*of New York, Inc., and the Junction City East Kingdom Hall of Jehovah's Witnesses)*

95. Plaintiff realleges and incorporates by reference paragraphs 1 through 94 as though fully set forth herein.

96. Defendants Zoller and Farr knowingly recruited, enticed, harbored, and obtained Plaintiff, a minor, and compelled her to provide sexual acts and related physical services for their benefit through coercion, fraud, and abuse of authority.

97. Watchtower and the Kingdom Hall knowingly benefited, financially and otherwise, from their participation in the trafficking venture involving Defendants Zoller and Farr. These benefits included avoidance of legal and financial consequences that would have resulted from mandatory reporting of sexual abuse of a minor, preservation of organizational reputation, protection from public scandal, and the continued retention of congregation members and receipt of members' financial donations. Despite receiving disclosures of abuse and maintaining internal information indicating misconduct, Watchtower and the Kingdom Hall acted with willful blindness by failing to intervene, report, or restrict the perpetrators, thereby enabling the venture from which they knowingly derived these benefits. Defendants consciously disregarded clear indicators of abuse and failed to take reasonable steps to prevent its continuation.

15. COMPLAINT

98.    Watchtower and the Kingdom Hall knowingly participated in the trafficking venture through an ongoing relationship with the individual perpetrators and through coordinated policies and practices that functioned as a tacit agreement to suppress reports of sexual abuse and handle allegations internally rather than report them to civil authorities. By maintaining authority structures, internal reporting requirements, and congregational practices that allowed Defendants Zoller and Farr to retain continued access to minor congregants, Watchtower and the Kingdom Hall facilitated and enabled the ongoing abuse. This pattern of conduct constitutes knowing participation in a venture within the meaning of 18 U.S.C. § 1595, as courts have recognized that participation may be established through a tacit agreement and coordinated conduct rather than an explicit agreement. Through these actions, Watchtower and the Kingdom Hall knowingly benefited, financially and otherwise, from the continued participation of congregational members while the abuse persisted.

99.    Plaintiff is entitled to compensatory, punitive, and statutory damages, attorneys' fees, and restitution under 18 U.S.C. § 1595.

**SECOND CAUSE OF ACTION**

**Forced Labor and Services**

**18 U.S.C. §§ 1589 and 1595**

***(Against Defendants Matthew Zoller, Jason Farr, Watchtower Bible and Tract Society of New York, Inc., and the Junction City East Kingdom Hall of Jehovah's Witnesses)***

100.    Plaintiff realleges and incorporates by reference paragraphs 1 through 94 of this Complaint as though fully set forth herein.

101.    Under 18 U.S.C. § 1589, it is unlawful to knowingly obtain the labor or services of a person by means of force, threats of force, physical restraint, abuse of law or legal process, or any scheme intended to cause the person to believe that failure to perform services would result in serious

16. COMPLAINT

harm.

102.    As described above, Defendants Zoller and Farr knowingly obtained Plaintiff's services while she was a minor through coercion, manipulation, abuse of authority, and psychological domination within the Jehovah's Witness religious structure.

103.    These services included repeated sexual acts and other physical conduct performed for the gratification and benefit of Defendants Zoller and Farr.

104.    Defendants exploited Plaintiff's youth, her dependence on the congregation, her fear of religious condemnation, and the threat of disfellowshipping to compel her to provide these services. Plaintiff reasonably believed that she would suffer serious harm if she refused to comply with Defendants Zoller and Farr, including spiritual condemnation, loss of her family and community, social isolation, and other severe emotional and psychological consequences within the insular religious environment in which she was raised.

105.    Watchtower and the Kingdom Hall knowingly benefited, financially and otherwise, from participation in the venture that obtained Plaintiff's services by maintaining policies and practices that discouraged reporting abuse to civil authorities and permitted perpetrators continued access to minor congregants.

106.    These benefits included avoidance of the legal and financial consequences of reporting the sexual abuse of a minor, preservation of institutional reputation, and the continued retention of congregation members and receipt of members' financial donations.

107.    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover compensatory damages, punitive damages, restitution, and attorneys' fees from all Defendants.

### THIRD CAUSE OF ACTION

**Trafficking With Respect to Involuntary Servitude (18 U.S.C. §§ 1590 and 1595)**

17. COMPLAINT

*(Against Defendants Matthew Zoller, Jason Farr, Watchtower Bible and Tract Society of New York, Inc., and the Junction City East Kingdom Hall of Jehovah's Witnesses)*

108.    Plaintiff realleges and incorporates by reference paragraphs 1 through 94 as though fully set forth herein.

109.    Under 18 U.S.C. § 1590, it is unlawful to knowingly recruit, harbor, transport, provide, or obtain a person for labor or services in violation of federal trafficking laws.

110.    Defendants Zoller and Farr recruited, enticed, harbored, and obtained Plaintiff for the purpose of compelling her to perform sexual acts and related services while she was a minor.

111.    These acts were carried out through coercion, psychological manipulation, abuse of religious authority, and exploitation of Plaintiff's fear of spiritual punishment and social isolation.

112.    Watchtower and the Kingdom Hall knowingly participated in the trafficking venture by willfully suppressing reports of sexual abuse to civil authorities, ensuring that allegations of abuse were handled internally rather than reported to law enforcement, and maintaining policies and authority structures that allowed the perpetrators continued access to Plaintiff and other minor congregants.

113.    Defendants knowingly benefited from the venture by preserving congregational membership, protecting the organization from public scrutiny, and maintaining the loyalty and financial contributions of congregation members.

114.    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover compensatory damages, punitive damages, attorneys' fees, and all other relief permitted by law.

**FOURTH CAUSE OF ACTION**

**Oregon Involuntary Servitude (Or. Rev. Stat. §§ 163.263 and 30.867**

*(Against All Defendants)*

115.    Plaintiff realleges and incorporates by reference paragraphs 1 through 94 as though fully

18. COMPLAINT

set forth herein.

116.    Under Or. Rev. Stat. § 163.263, a person commits involuntary servitude when the person knowingly forces or attempts to force another person to engage in or continue to engage in services through abuse or threatened abuse of the law or legal process, fraud, or misrepresentation.  Or. Rev. Stat. § 30.867 provides a civil cause of action for victims of involuntary servitude and trafficking.

117.    Defendants Zoller and Farr engaged in conduct constituting involuntary servitude and trafficking under Oregon law by knowingly compelling Plaintiff, while she was a minor, to engage in sexual acts and related services through psychological coercion, manipulation, fraud and misrepresentation. Defendants Zoller and Farr abused their authority and the adjudicatory processes within the Jehovah's Witness congregation to continue the sexual services and to conceal and misrepresent their abuse of Plaintiff.

118.    Watchtower and the Kingdom Hall knowingly participated in and benefited from the conduct described above by maintaining policies and practices that concealed abuse and enabled perpetrators to retain access to minor congregants.

119.    These acts were carried out in a coercive and fraudulent environment in which Plaintiff reasonably believed she could not refuse without suffering severe social, spiritual, and emotional harm.

120.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, psychological trauma, economic harm, and other damages described in this Complaint.  Plaintiff is entitled to recover compensatory damages, punitive damages, and all other relief available under Oregon law.

**FIFTH CAUSE OF ACTION**

**Child Sexual Abuse**

19. COMPLAINT

**(Or. Rev. Stat. §§ 12.117 and 163.415)**

*(Against Defendants Matthew Zoller and Jason Farr)*

121.    Plaintiff realleges and incorporates by reference paragraphs 1 through 94 as though fully set forth herein.

122.    Under Or. Rev. Stat. § 12.117 and Or. Rev. Stat. § 163.415, a person commits sexual abuse of a child when the person subjects another person to sexual contact and the victim is incapable of consent by reason of being under 18 years of age.

123.    Defendants Zoller and Farr subjected Plaintiff to sexual conduct while she was under 18 years of age.

124.    This conduct by Defendants Zoller and Farr cause Plaintiff to suffer severe emotional distress, psychological trauma, economic harm, and other damages described in this Complaint.

125.    Plaintiff is entitled to recover compensatory damages and all other relief available under Oregon law.

## SIXTH CAUSE OF ACTION

**Civil Remedy for Sexual Abuse of a Minor (18 U.S.C. §2255)**

*(Against Defendants Matthew Zoller and Jason Farr)*

126.    Plaintiff realleges and incorporates by reference paragraphs 1 through 94 of this Complaint as though fully set forth herein.

127.    At all times relevant to this claim, Plaintiff was a minor within the meaning of federal law.

128.    During the period in which Plaintiff was a minor, Defendants Matthew Zoller and Jason Farr knowingly engaged in sexual acts with Plaintiff through coercion, manipulation, and abuse of

20. COMPLAINT

authority.

129.    The conduct described herein constitutes sexual abuse of a minor within the meaning of 18 U.S.C. § 2255, including predicate offenses involving the sexual exploitation of a minor through coercion, manipulation, and abuse of authority. Plaintiff was subjected to repeated sexual acts while legally incapable of consent due to her age and the coercive circumstances imposed by Defendants.

130.    Plaintiff's claim under 18 U.S.C. § 2255 is timely because the statute provides that there is no time limit for the filing of a complaint commencing an action under this section.

131.    Pursuant to 18 U.S.C. § 2255, Plaintiff is entitled to recover the greater of her actual damages or statutory damages of not less than $150,000, together with punitive damages, reasonable attorneys' fees, and costs.

132.    Plaintiff further seeks all preliminary and equitable relief available under 18 U.S.C. § 2255 to redress the injuries caused by Defendants' conduct.

**SEVENTH CAUSE OF ACTION**

**Negligence and Negligent Supervision (Oregon Common Law)**

*(Against Defendants Watchtower Bible and Tract Society of New York, Inc. and the*

*Junction City East Kingdom Hall of Jehovah's Witnesses)*

133.    Plaintiff realleges and incorporates by reference paragraphs 1 through 94 as though fully set forth herein.

134.    Defendants Watchtower Bible and Tract Society of New York, Inc. and the Junction City East Kingdom Hall of Jehovah's Witnesses owed Plaintiff a duty to exercise reasonable care to protect minor members of the congregation from foreseeable harm, including sexual abuse and exploitation by adult congregants and individuals acting under their authority. Defendants also owed a duty to supervise clergy, elders, and adult congregants, to comply with state mandatory reporting laws,

21. COMPLAINT

and to maintain safe environments for minors entrusted to their care.

135.    The risk of sexual abuse to Plaintiff was foreseeable to Watchtower and the Kingdom Hall. Prior to and during the period of Plaintiff's abuse, Defendants were aware, or in the exercise of reasonable care should have been aware, of known risks of sexual misconduct within Jehovah's Witness congregations, including prior incidents of abuse involving elders, ministerial servants, and adult congregants. Defendants maintained internal records, policies, and guidance acknowledging the recurring problem of child sexual abuse within the organization and the need for protective measures.

136.    Defendants also knew or reasonably should have known that permitting adult male congregants, including Defendants Zoller and Farr and adult congregant Gene Baird, to have unsupervised access to minor children created a substantial and foreseeable risk of harm. The sexual abuse committed against Plaintiff was therefore a foreseeable result of Defendants' failure to supervise, investigate, restrict, or report known risks of abuse.

137.    Because the danger was foreseeable, Defendants had a duty to take reasonable protective steps to safeguard minors within the congregation, including removing known or suspected offenders from positions of access to children, enforcing reporting requirements, monitoring interactions between adults and minors, investigating allegations of misconduct, and reporting disclosures of abuse to civil authorities. Defendants' failure to take these precautions breached their duty of care and directly contributed to Plaintiff's injuries.

138.    At all relevant times, elders and agents of Defendants were mandatory reporters under Oregon law, including Or. Rev. Stat. § 419B.010, which requires clergy and other designated persons to report suspected child abuse to law enforcement or the Oregon Department of Human Services. Despite receiving disclosures of abuse and having reason to suspect child abuse, Defendants failed to report the abuse to civil authorities as required by law.

22. COMPLAINT

139. Defendants' failure to report suspected child abuse constituted a violation of Or. Rev. Stat. § 419B.010 and therefore constitutes negligence *per se*. Plaintiff is within the class of persons the statute was designed to protect, and the injuries she suffered, including continued sexual exploitation and resulting psychological harm, are precisely the type of harms the reporting statute was enacted to prevent. These statutory violations directly enabled the continuation and escalation of the abuse Plaintiff suffered.

140. Defendants also breached their supervisory duties by failing to adequately screen and supervise personnel, by failing to investigate credible reports of abuse, and by failing to remove or restrict individuals who posed a known risk to minor congregants.

141. Through principles of agency and *respondeat superior*, Defendants are liable for the negligent acts and omissions of their elders, agents, and representatives acting within the scope of their authority and performing functions on behalf of the congregation.

142. As a direct and proximate result of Defendants' negligence and negligent supervision, Plaintiff suffered severe emotional distress, psychological trauma, medical expenses, loss of economic opportunity, and other damages described in this Complaint.

## EIGHTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

*(Against Defendants Watchtower Bible and Tract Society of New York, Inc., and the Junction City East Kingdom Hall of Jehovah's Witnesses)*

143. Plaintiff realleges and incorporates by reference paragraphs 1 through 94 as though fully set forth herein.

144. Defendants' conduct, including the sexual abuse of a minor, coercive pressure to remain silent, intimidation during questioning about the abuse, and retaliatory actions taken because Plaintiff

23. COMPLAINT

reported criminal misconduct, constituted extreme and outrageous behavior under secular standards of conduct. These actions were undertaken for non-religious, operational purposes and are independent of any protected doctrinal or ecclesiastical decisions.

145. Defendants acted intentionally or with reckless disregard of the probability of causing Plaintiff severe emotional distress. Their actions, including coercion, intimidation, concealment of abuse, and retaliation for reporting abuse, were undertaken knowingly and foreseeably caused the emotional injuries Plaintiff continues to suffer.

146. Defendants' failure to intervene, protect Plaintiff, or prevent further retaliation in response to her disclosures, including their responses during the 2020 proceedings, which were carried out in a punitive and retaliatory manner because she reported prior abuse, demonstrates ongoing supervisory and operational failures. These failures were secular in nature and continued to cause Plaintiff substantial emotional harm well into adulthood.

## NINTH CAUSE OF ACTION

**Civil Conspiracy (Theory of Joint Liability Under Oregon Law)**

*(Against Defendants Watchtower Bible and Tract Society of New York, Inc., and the*

*Junction City East Kingdom Hall of Jehovah's Witnesses)*

147. Plaintiff realleges and incorporates by reference paragraphs 1 through 94 as though fully set forth herein.

148. Plaintiff alleges civil conspiracy not as an independent cause of action, but as a theory of joint liability for the underlying tortious conduct described herein. Defendants knowingly agreed, expressly or tacitly, to participate in a common plan to conceal abuse, suppress reporting, and protect perpetrators.

149. Defendants entered into and participated in a common plan, policy, and practice to

24. COMPLAINT

conceal sexual abuse within the congregation, suppress reports of abuse to civil authorities, and retaliate against individuals who disclosed misconduct.

150.    The objective of this agreement was to protect the reputation of the organization, shield perpetrators from accountability, and prevent scrutiny by law enforcement and the public.

151.    In furtherance of this coordinated conduct, Defendants committed numerous overt acts, including but not limited to:

a) discouraging or preventing reports of abuse to law enforcement;

b) applying internal policies such as the "two-witness rule" to dismiss or minimize abuse allegations;

c) discrediting Plaintiff and blaming her for the misconduct she reported;

d) conducting internal disciplinary proceedings designed to silence Plaintiff;

e) publicly shaming or disfellowshipping Plaintiff after she attempted to report abuse.

152.    Defendants' conduct was undertaken pursuant to shared policies and practices that prioritized institutional protection over the safety of minor congregants.

153.    Each Defendant knowingly participated in and benefited from this coordinated conduct by maintaining silence regarding the abuse and enabling continued access to minor congregants by individuals who posed a risk of sexual misconduct.

154.    As a direct and proximate result of Defendants' underlying tortious conduct, carried out pursuant to their agreement and coordinated actions, Plaintiff suffered severe emotional distress, psychological trauma, economic losses, and other damages described in this Complaint.

155.    Defendants are jointly and severally liable for all damages resulting from the underlying tortious conduct.

25. COMPLAINT

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and:

A.  Award compensatory damages for physical, emotional, and economic injuries;

B.  Award special damages for past and future medical and therapeutic care;

C.  Award punitive damages to punish and deter egregious misconduct;

D.  Award statutory damages, restitution, and disgorgement pursuant to 18 U.S.C. § 1595;

E.  Award damages for loss of earning capacity, diminished economic opportunity, and financial hardship resulting from Defendants' conduct and institutional practices.

F.  Award Plaintiff compensation for severe emotional injuries sustained in the last five years, including major depression, anxiety, and identity loss resulting from ongoing shunning and community ostracism.

G.  Award attorneys' fees and costs;

H.  Grant injunctive and equitable relief requiring institutional reforms and compliance with reporting obligations; and

I.  Grant such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: July, 20, 2026.

> */s/ Joel Shapiro*
> Joel Shapiro, OSB #003814
> Law Office of Joel Shapiro, LLC
> 1420 NW Lovejoy St., Suite 631
> Portland, OR  97209
> Telephone: (971) 999-1889
> Email: joel@joelshapirolaw.com

26. COMPLAINT

Travis R. Walker (*pro hac vice forthcoming*)
The Law Offices of Travis R. Walker, P.A.
Florida Bar #36693
1100 SE Federal Hwy
Stuart, FL  34994
T: (772) 708-0952
E: travis@traviswalkerlaw.com

***Attorneys for Plaintiff***

27. COMPLAINT